## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**STEVE RODARTE**, **GINA NEZ**,
**JIMMY SERRANO**, and **ALEX BOLDEN**,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

v.                                                     No. 14-CV-193 JAP/SCY

**BOARD OF COUNTY COMMISSIONERS**
**OF BERNALILLO COUNTY**,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

On June 29, 2015, Plaintiffs filed a JOINT MOTION TO APPROVE SETTLEMENT, CLASS NOTICES AND FINAL JUDGMENT (Motion) (Doc. No. 84). Defendant does not oppose the Motion. The Court held a hearing on the Motion on August 5, 2015. For the following reasons, the Court will deny the Motion.

### BACKGROUND

A.    <u>History of this litigation and this Court's certification order</u>

On February 28, 2014, Plaintiffs Steve Rodarte, Gina Nez, Jimmy Serrano, and Alex Bolden filed a COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, UNJUST ENRICHMENT, AND QUANTUM MERUIT COLLECTIVE ACTION COMPLAINT (29 U.S.C. § 216(b)) (Complaint) (Doc. No. 1). Plaintiffs are current and former Youth Program Officers (YPOs) employed by Defendant at the Bernalillo County Youth Services Center. Complaint ¶¶ 8–9. According to the Complaint, Plaintiffs (and all other similarly-situated YPOs) were "expressly required, by written post orders, standard operating procedures, and other directives, to report to work between 10-15 minutes prior to the beginning

of their shift" and were not compensated for this time. *Id.* ¶ 12. The Complaint further alleges that Defendant's policies required YPOs to stay beyond their scheduled shift until they were relieved by another YPO. *Id.* ¶ 14. Plaintiffs contend that Defendant violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* and was liable under New Mexico law for unjust enrichment by failing to compensate YPOs for this pre- and post-shift work. Plaintiffs sought conditional certification of an opt-in collective action under the FLSA and an opt-out class action under Rule 23(b)(3). *See* MOTION TO CERTIFY CLASS (Doc. No. 30).

On October 20, 2014, the Court granted in part and denied in part Plaintiffs' motion to certify. The Court granted the motion as to allegedly unpaid pre-shift work, but denied the motion as to unpaid post-shift work, essentially because individual questions of fact predominated over that aspect of the Plaintiff's FLSA and unjust enrichment claims. The Court defined the FLSA and Rule 23(b)(3) class as follows:

> All current and former employees of Bernalillo County employed at the Bernalillo County Youth Services Center within the past three years as a Youth Program Officer I [YPO I] or Youth Program Officer II [YPO II] who have, at any time in the relevant period, worked at a post that required uncompensated pre-shift briefing and work related to on-coming or outgoing employees in that post.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO CERTIFY (Doc. No. 43) at 8.

After sending notice to class members, class counsel received 50 opt-in forms from members of the FLSA class and 2 opt-out forms for the unjust enrichment class before the cutoff date for class members to opt in to the FLSA action or opt out of the Rule 23(b)(3) class action. Motion at 2. n.1. Four opt-in forms were from employees not eligible because they did not

engage in shift-to-shift briefing. In total, there are 44 members of the FLSA collective action class and 73 members of the unjust enrichment class. *Id.*

  B. <u>Details of the parties' proposed settlement agreement</u>

  After negotiations and a settlement conference before Magistrate Judge Stephen C. Yarborough, the parties entered into a settlement agreement. Motion at 2. Defendant agreed to pay up to $250,000.00 in order to settle the Plaintiffs' claims. *Id.* The $250,000.00 maximum includes a $50,000.00 attorneys' fee award (plus $5,000 in costs for a total of $55,000.00). *Id.* at 10.

  Class counsel explains the division of settlement funds as follows. Class counsel calculated damages suffered by the FLSA class by multiplying their hourly wages by 15 minutes per day and then by five days a week, and finally by the number of weeks the class member had been employed by Defendant. Class counsel calculated the total amount of damages as $300,000.00. The FLSA class's award of $162,000.00 under the settlement agreement reflects the strength of Defendant's defense, which sought to prove that class members offset any early arrivals by leaving their shifts, or that the failure to pay wages was the result of a good faith mistake, an affirmative defense to liability for liquidated damages. Motion at 9 (citing 29 U.S.C. § 260).

  As to the unjust enrichment class, Defendant offered to pay each class member for three minutes of work at their prevailing wage during the period at issue. This resulted in a payment amount of $29,273.41. *Id.* at 8. Class counsel rejected this calculation, but ultimately agreed to a $33,000.00 amount to be paid to unjust enrichment class members. Class counsel explained that four reasons justify this settlement amount: (1) the "uncertain nature of unjust enrichment claims against a political subdivision of the State under New Mexico law[,]" *id.* at 8; (2) the FLSA class

would have been entitled to liquidated damages equal to the amount of compensatory damages had they prevailed, *id.*; (3) the statute of limitations for FLSA claims is longer than for unjust enrichment claims, *id.*; and (4) the award (and the award for FLSA class members) reflected the risk that Defendant would be required to pay class counsel's attorneys fees if the FLSA class prevailed. *See id.* at 10.

Under the settlement agreement, all 44 FLSA class members will receive a form notice explaining the terms of the settlement. *Id.* at 5. Each class member must sign a release of claim form and return it to class counsel, who in turn will provide the form to Defendant. *Id.* After receiving a release from a FLSA class member, Defendant will pay the class member whatever he is entitled to under the settlement. *See id. See also* Doc. No. 84-3 (settlement payment amounts to FLSA class members).

The notice and payment process is much the same for unjust enrichment class members. Within 30 days of receiving notice of the amount the member is entitled to under the settlement, each unjust enrichment class member must submit a claim form to class counsel. Class counsel will provide the form to Defendant, and Defendant will pay the unjust enrichment class member the amount owed under the settlement agreement. *See* Motion at 5–6; Doc. No. 84-6 (settlement payment amounts to unjust enrichment class members).

C.     The Court's concerns with the proposed settlement agreement and Class counsel's presentation at the Court's hearing on the Motion

In a letter sent to counsel for Plaintiffs and Defendant before the August 5, 2015 hearing on the parties' Motion, the Court identified three concerns it had with the proposed settlement: (1) the settlement agreement and class notice does not inform unjust enrichment class members that they may object to the proposed settlement; (2) the Court was not entirely persuaded by the

parties' proffered justification for awarding unjust enrichment class members roughly 1/5 the amount due to FLSA class members; and (3) the affidavit of attorney Shane Youtz attached to the Motion did not provide the Court with sufficient information about the amount of time class counsel spent on the case to evaluate the fairness and reasonableness of the Motion's proposed $55,000 attorneys fee award to class counsel.

At the August 5, 2015 hearing on the Motion, Mr. Stephen Curtice appeared on behalf of Plaintiffs, and Ms. Agnes Padilla appeared on behalf of Defendant. Mr. Curtice agreed to provide the Court with detailed timesheets for each attorney and paralegal that worked on the case, thus assuaging the Court's third concern. As to Court's concern with the proposed settlement's notice to unjust enrichment class members, Mr. Curtice provided some clarification about the terms and purpose of the settlement agreement. Mr. Curtice maintained that notice to absent class members of their right to object to a proposed settlement is only required when a settlement would bind absent class members. *See* Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing…."); Fed. R. Civ. P. 23(e)(5) ("Any class member may object to the proposal if it requires court approval under this subdivision (e)….").

More generally, Mr. Curtice said that the parties structured the settlement agreement to avoid binding absent unjust enrichment class members. The agreement requires unjust enrichment class members to fill out a claims form to obtain payment; if they do not, their claims are essentially dismissed without prejudice. The parties structured the agreement this way, Mr. Curtice explained, in order to avoid the need to hear objections from absent class members and the attendant court hearing on those objections. *See* Fed. R. Civ. P. 23(e).

This argument was at first confusing; by offering unjust enrichment class members an opportunity to receive compensation from the settlement fund by signing and returning a form

releasing all claims against Defendant while simultaneously disavowing any claim to bind the absent class members, the agreement (at least with respect to the unjust enrichment class) appears to be neither fish nor fowl. But Mr. Curtice finally described the Motion in a way the Court found at least somewhat understandable: while the Motion seeks approval of a settlement of the FLSA class claims, it actually seeks decertification of the unjust enrichment class as a whole. In exchange Defendant agreed to offer individual compensation to unjust enrichment class members who agree to release any individual claims they may have against Defendant.

As to the Court's concerns with the ratio between the settlement award to the unjust enrichment class and the award to the FLSA class, Mr. Curtice fleshed out the Motion's arguments on this point. As to the "uncertain nature of unjust enrichment claims against a political subdivision of the State under New Mexico law[,]" Motion at 8, Mr. Curtice explained that under the New Mexico Supreme Court's decision in *Hydro Conduit Corp. v. Kemble*, 793 P.2d 855, 110 N.M. 173 (N.M. 1990), it was very likely that Defendant enjoys statutory immunity from unjust enrichment claims. After taking into account this legal uncertainty, the availability of liquidated (often dubbed "double") damages under the FLSA, and the longer statute of limitations for FLSA claims, Mr. Curtice argued that the disparity in the amount awarded to each class was more  understandable.

## LEGAL STANDARDS

A.    Legal standard for settlement of FLSA collective actions

A claim under the FLSA for  unpaid wages may not be waived or released without judicial approval, and that judicial approval must be conditioned on the settlement furthering the FLSA's general goals. Motion at 3–4 (citing *Brooklyn Savings v. O'Neil*, 324 U.S. 697 (1945)). Whether the settlement accomplishes the FLSA's goals is in turn determined by equitable

concerns for class members' interests. *Id.* at 4 (citing *Jarrard v. Southeastern Shipbuilding*, 163 F.2d 960, 961 (5th Cir. 1947); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

The United States District Court for the Southern District of Florida, Tampa Division reads *Lynn's Food* to require "the parties to an FLSA compromise to present the proposed agreement to the district court, which 'may enter a stipulated judgment after scrutinizing the settlement for fairness.'" *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1240 (S.D. Fla. 2010) (quoting *Lynn's Food*, 679 F.2d at 1353). The *Dees* court in turn quoted the description of the difficulties a district court faces in evaluating the fairness of a proposed FLSA settlement found in *Bonetti v. Embarq Management Co.*, 715 F.Supp.2d 1222 (M.D.Fla. 2009):

> Short of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement. Many factors may be in play as the parties negotiate a compromise that is acceptable to both sides. The parties may disagree as to the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer. In certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising from the employment relationship. If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable. Rarely will the Court be in a position to competently declare that such a settlement is "unreasonable."
>
> Nevertheless, the district court must scrutinize the settlement for fairness. To fully implement the policy embodied by the FLSA, the district should scrutinize the compromise in two steps. First, the court should consider whether the compromise is fair and reasonable to the employee (factors "internal" to the compromise). If the compromise is reasonable to the employee, the court should inquire whether the compromise otherwise impermissibly frustrates implementation of the FLSA (factors 'external' to the compromise). The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace.

*Id.* at 1233 (internal quotation marks omitted).

The *Dees* Court lists the following factors as relevant to determining whether the settlement is "internally" reasonable:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

*Id.* at 1241 (quoting Pessoa v. Countrywide Home Loans, Inc., 2007 WL 1017577, at 3 (M.D. Fla. Apr. 2, 2007) (internal quotation marks omitted)).

As to the "external" reasonableness of a settlement, the *Dees* court identified the following factors:

> Compromise of a retrospective dispute may be permissible if, for example, the FLSA issue in a case is unresolvably close on the facts or the law or some extraordinary circumstance (say, a suddenly disabled claimant or an employer in liquidation) commends a speedy or certain resolution. On the other hand, several factors may commend rejecting a proposed compromise, including the presence of other employees situated similarly to the claimant, a likelihood that the claimant's circumstance will recur, a history of FLSA non-compliance by the same employer or others in the same industry or geographic region, or the requirement for a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace. In all instances, the district court should faithfully execute the congressional mandate for 'minimum wages, promptly paid…for the lowest paid segment of the nation's workers.'

*Id.* at 1244 (quoting *D.A. Schulte v. Gangi*, 328 U.S. 108, 116 (1946) (alteration original)).

Although the analysis is fairly involved, the district court's analysis of a FLSA settlement can be distilled to three general considerations: "(1) [whether] the litigation involves a bona fide dispute, (2) [whether] the proposed settlement is fair and equitable to all parties concerned, and (3) [whether] the proposed settlement contains a reasonable award of attorneys' fees." *Baker v.*

*Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 7000096 at *1 (D. Colo. Feb. 24, 2014) (citing *Lynn's Food*, 679 F.2d at 1354.).

B.    Legal standard for settlement of Rule 23 class actions

Rule 23(e) provides that "claims…may be settled…only with the court's approval." Rule 23 requires courts to adhere to the following procedure in evaluating the propriety of a proposed settlement:

> (1)    The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2)    If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate;
> (3)    The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> (4)    If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> (5)    Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

C.    Legal standard for determining the reasonableness of an attorneys' fee

        award from a common-fund settlement

An award for attorneys' fees from a common fund is evaluated differently than an entitlement to attorneys' fees under a fee-shifting statute. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988). Under the "common fund" doctrine, "persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Just as a trustee is entitled to reimbursement from the trust, common fund attorneys' fees are taken from the overall

damage recovery. *Brown*, 838 F.2d at 454. Accordingly, the amount of people benefitted by the common fund is relevant to determining the reasonableness of the attorneys' fee award from that fund, whereas the number of beneficiaries of a statutory fee award is of no relevance. *Id.*

"When there is a common fund created by a settlement, courts have applied one of two methods of determining reasonable attorney's fee awards: by a percentage of the fund, or by the lodestar method developed in the statutory fee shifting cases." *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995) (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993)). Under *Brown*, it is not an abuse of discretion to award a flat percentage of a common fund to class counsel, but the district court must still determine whether the percentage award is reasonable under a lodestar analysis. Accordingly, a district court must evaluate the following factors in determining the reasonableness of an award:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Brown*, 838 F.3d at 454–55 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

## DISCUSSION

### A. <u>Fairness of the proposed FLSA settlement</u>

Although the *Dees* and *Bonetti* courts analyzed the fairness of a FLSA settlement agreement under the rubric of "internal" and "external" factors, the Court will subsume its discussion of those factors to the more general concerns identified by the *Baker* court as

10

dispositive to *Lynn's Food*: (i) whether the litigation involves a bona fide dispute, (ii) whether the proposed settlement is fair and equitable to all parties concerned, and (iii) whether the proposed settlement contains a reasonable award of attorneys' fees.

      i.     <u>Whether a bona fide dispute exists</u>

"Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists." *Baker*, 2014 WL 700096 at *1 (citing *Dees*, 706 F.Supp.2d at 1234).

> To meet this obligation, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Baker*, 2014 WL 7000096 *1 (citation omitted).

The Court finds that the Motion, along with the briefing in support of and in opposition to Plaintiff's motion for class certification, gives the Court an adequate description of the nature of the dispute and the employer's business and the type of work performed by the employees. This much is explained in detail in the Court's earlier memorandum opinion and order granting in part Plaintiff's motion for conditional certification of an FLSA collective action. *See* Doc. No. 43 at 2–3 (explaining Defendant's business and Plaintiffs' roles).

In the Motion, class counsel explains the Defendant's dispute to Plaintiffs' right to overtime as follows:

> To calculate damages for the collective action, Plaintiffs were prepared to present evidence supporting…[a calculation of] total unpaid back wages on the basis of 15 minutes per day (until March, 2013), and ten minutes a day (after March 2013)—as specified in their Post Orders—multiplied by five days per week,

multiplied by the number of weeks that each Plaintiff had been employed by MDC. Theoretically, this would yield approximately $300,000 in damages, assuming a three-year limitations period and liquidated damages.

Defendant was prepared to contest these calculations. In particular, Defendant planned on contesting that Plaintiffs, in fact, arrived at the times specified in their post orders and that the time their [sic] arrived early would often be offset by an early departure, without diminution in their pay. Defendant intended to seek an award of no damages, or in the alternative, far less in damages than Plaintiffs sought. Defendant calculated the damages for the collective class (based on a review of sign-in sheets, and assuming two years of recovery with liquidated damages) to be $46,883.97. Defendant also intended to prove, as an affirmative defense, that its failure to pay wages, if such occurred, was the result of a good faith mistake, thus permitting the Court to exercise its discretion to decline the award of liquidated damages pursuant to 29 U.S.C. § 260.

Motion at 9. The Court concludes that the Plaintiffs had a viable theory of recovery against the Defendant, and that Defendant had a plausible argument that its post orders, assuming they did violate the FLSA, did not cause Plaintiffs any damages. *See also* Doc. No. 30-2 at 1 (email from Craig Sparks to YPO employees) ("We also have instances where some employees are arriving too early…. [A]rriving at your post too early poses other problems and has resulted in some employees being relieved from their post and departing from the facility up to 20 minutes before their shift is scheduled to end.").

Although the parties have not submitted to the Court an explanation for how they computed each FLSA opt-in plaintiff's payment under the settlement agreement, the Court is satisfied that the parties' computation is not the result of collusion. This conclusion is buttressed by an application of the 'internal' reasonableness factors identified by the *Dees* court. Because this Court has already resolved a disputed motion to conditionally certify a collective action, the Court is minimally concerned with the possibility that the settlement is the result of collusion

between the parties. There has been extensive discovery, and Plaintiffs had a reasonable chance

of success on the merits. The Court is most persuaded, however, by the fact that the settlement

payment to the FLSA class as a whole is a significant portion of the Plaintiffs' own calculations

of Defendants' liability using a highly liberal averaging methodology.

ii.   <u>Whether the proposed settlement is fair and equitable to all parties concerned</u>

The *Baker* court imported to the FLSA settlement context those factors courts apply to

proposed settlements under Fed. R. Civ. P. 23(e) to the FLSA context. *See Baker*, 2014 WL

7000096 at *2. In the Tenth Circuit, those factors are (1) whether the parties fairly and honestly

negotiated the settlement; (2) whether serious questions of law and fact exist which place the

ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery

outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of

the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*,

314 F.3d 1180, 1188 (10th Cir. 2002).

There is reason to doubt that FLSA opt-in class action settlements and Rule 23(b)(3) class

action settlements should be evaluated using the same set of factors. As the Seventh Circuit has

explained,

> The Supreme Court's early decisions interpreting the FLSA led to
> a great rush of litigation under the statute. *See generally
> Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989).
> Congress responded in the Portal–to–Portal Act of 1947, 61 Stat.
> 84, as amended, 29 U.S.C. §§ 251–262, by both eliminating
> 'representative' actions (where employees would designate another
> to sue on their behalf) and by adding the opt-in provision to the
> statute for collective actions brought by employees. The effect was
> to 'limit private FLSA plaintiffs to employees who asserted claims
> in their own right and free employers of the burden of
> representative actions.' *Hoffmann–La Roche Inc.*, 493 U.S. at 173.
> This action was designed to eliminate lawsuits initiated by third

> parties (typically union leaders) on behalf of a disinterested employee (in other words, someone who would not otherwise have participated in the federal lawsuit).

*Ervin v. OS Rest. Services, Inc.*, 632 F.3d 971, 977–78 (7th Cir. 2011) (alteration to second internal quotation omitted). Unlike Rule 23(b)(3) actions, which require class members to 'opt-out,' FLSA collective actions require class members to 'opt-in,' greatly increasing the likelihood that class members will take an active interest in settlement negotiations, thereby decreasing the chances of collusion between class counsel and the defendant. *See Muecke v. A-Reliable Auto Parts and Wreckers, Inc.*, No. 01-C-2361, 2002 WL 1359411 at *2 n.2 (N.D. Ill. June 21, 2002) ("In the Court's experience, few if any persons who receive notice of a class action opt out; though one could argue that this is because the vast majority of notice recipients make an affirmative decision to stay in the case, it is just as likely that the tiny number of opt-outs occurs because recipients ignore the notice (believing it to be "junk mail") or once seeing it, do not bother to read it.").

Moreover, when a district court certifies a class action under Rule 23(b)(3), the class action defendant may face an independent incentive to settle with class counsel in order to avoid potentially open-ended liability to an indeterminate number of class members. In contrast, Defendant in this case knew its potential maximum exposure once the deadline for opting in to the collective action passed. Thus the presence of collusion and the complexity of the legal issues involved become more or less the same inquiry; the settlement reflects the legal and factual disputes that were still at play when the settlement was reached while compensating FLSA collective action members with a significant portion of the amount Plaintiffs sought at trial.

iii.    Whether the proposed settlement contains a reasonable award of

attorneys' fees

The settlement agreement awards $50,000 to Class counsel and $5,000 in costs. *See* Doc.

No. 84-1 at 2. In addition to arguing that the award of attorneys' fees and costs is fair in the

Motion itself, Class counsel has submitted (1) a DECLARATION OF SHANE YOUTZ (Youtz

Decl.) (Doc. No. 84-8); and (2) an itemization of services that shows how much time each

attorney and paralegal spent on this case and provides a few details about how that time was

spent. The Court has reviewed these documents and now makes the following conclusions by

applying the *Brown* factors to Plaintiffs' requested attorneys' fee award.

The itemization of services indicates that class counsel (including a paralegal) spent a

total of 233.75 hours working on this case. The attorneys spent 186 hours on the case, total. The

paralegal spent the remaining 47.25 hours. Attorney Youtz's only contribution to the case was

"review[ing] and finaliz[ing] Complaint," which took Mr. Youtz three quarters of an hour.

Attorney Montalbano, who billed at $450 per hour, spent 2 hours working on this case. The

remainder, 183.75 hours, was billed by Mr. Curtice at $650 per hour. The paralegal worked at a

rate of $200 per hour. This yielded a lodestar of $130,212.50. Since the settlement seeks to

award $50,000, this lowers the overall rate charged by 62%.

(1) The time and labor involved

The Court has reviewed class counsels' billing statement and is satisfied that the amount

of time and labor involved in this case justifies the proposed attorneys' fee award, with one

caveat: Mr. Curtice spent 29 hours "calculating damages" for each member of the class for use in

a supplemental settlement demand. But Plaintiffs' damages calculation is based on a rudimentary

average of the amount of time worked in pre-shift briefing, multiplied by the number of minutes

per day worked, multiplied by the number of days per week that an employee worked, multiplied by the number of weeks an employee worked. The Court is somewhat baffled that (1) Mr. Curtice needed to spend 29 hours making these calculations for a collective action class numbering 44 and an unjust enrichment class numbering not much more; and (2) that Mr. Curtice could not have his paralegal do these rote calculations.

This anomaly is somewhat dampened by the difference between the lodestar and the settlement award. In any event, this case was not highly contested, but it did not settle straightaway. Plaintiffs' motion to certify a collective action was contested by Defendant, and after the Court partially granted Plaintiffs' motion to certify, Class counsel deposed Defendant's corporate representative and defended depositions of each of the named plaintiffs. This factor favors approval of the proposed fee award. The Court finds that class counsel has carried its burden in showing that the total amount of time spent on this case is justified.

(2) The novelty and difficulty of the questions involved in this case

The Court has already noted that the legal issues in this case were not very complex—and the question of liability, though contested, would not be difficult for a jury to resolve. Although Defendant contested its liability based on its reading of post orders and time sheets, and also planned to present a 'good faith' defense to liability, the fact that class counsel would have to overcome these obstacles in order to prevail at trial does not *ipso facto* render those obstacles novel or difficult. Although this factor perhaps undermines some of class counsel's claims for time spent preparing motions, the Court is not overly concerned given the significant discount to class counsel's lodestar amount under the settlement agreement.

(3) <u>The skill requisite to perform the legal service properly</u>

Although the FLSA is not a highly complex statutory regime, the Court is not unaware that this area of the law is somewhat of a niche practice in this District. Although the Court remains concerned with class counsel's proposed resolution of the unjust enrichment class's claims, the Court continues to believe that class counsel has "adequately discharge[d] his duties to" the FLSA class members. Doc. No. 43 at 11. The Court finds that this factor weighs in favor of approving the proposed fee award.

(4) <u>The preclusion of other employment by the attorney due to acceptance of the case</u>

Attorneys for the class have not presented any evidence that they were precluded from taking other cases because of this case; Accordingly, this factor does not weigh in favor of the proposed fee award.

(5) <u>The customary fee</u>

Class counsel says that "in other complex FLSA litigation, Plaintiffs' counsel represents that they have been awarded rates of up to $650.00 per hour for attorneys with FLSA litigation experience, and $200.00 per hour for FLSA-experienced paralegals." Motion at 11. At the hearing on the Motion, Mr. Curtice stated the Motion referred to a New Mexico State District Court's approval of a $650.00 per hour fee award in *Armijo v. Wal-Mart Stores, Inc.*, 168 P.3d 129 (N.M. Ct. App. 2007).

The $650 lodestar fee proposed by the Plaintiffs is—frankly—ridiculous. The United States District Court for the Southern District of New York has laughed away a proposed $550 per hour lodestar rate for FLSA attorneys working in New York City, a legal market with much higher hourly rates. *See Sakiko Fujiwara v. Sushi Yasuda Ltd*, 58 F.Supp.3d 424, 437 (S.D.N.Y. 2014). As that court noted, counsel for FLSA classes are often from the plaintiffs' bar, and their

rates are rough estimates that are relatively "untested by the marketplace." *Id.* Citing another judicial decision finding such a rate reasonable, as Plaintiffs have done here, just begs the question about whether or not class counsel could actually obtain these rates from paying clients instead of under a contingency arrangement.

In any event, and closer to home, this Court recently awarded attorneys' fees under 42 U.S.C. § 1988 based on a $425.00 per hour lodestar to civil rights attorneys with decades of experience in New Mexico. *See* Chavez v. Chavez et al., No. 13-cv-1047, Memorandum Opinion and Order Granting Plaintiff's Corrected Motion For Attorney Fees And Costs (Doc. No. 116). While this Court does not doubt Mr. Youtz's pedigree as a labor lawyer, he only spent three quarters of an hour reviewing and finalizing the complaint in this case. In the absence of any information about Mr. Curtice's own qualifications and customary fees in FLSA litigation, the Court would not be inclined to approve an award of fees on a $650 per hour rate.

While the Court is skeptical of Plaintiff's statement that the issues in this case were "complex" and even more skeptical of class counsel's argument that $650 per hour is in any way justified for this type of litigation in this District, the Court's concerns are assuaged by class counsel's decision to accept a fee award of less than half class counsel's lodestar. This persuades the court that the fee award under this settlement is reasonable in light of the customary fees charged in FLSA litigation.

    (6)   <u>Any prearranged fee</u>

In the Motion, Class Counsel points out that the fee award of $50,000 is less than the 33.33% contingency arrangement that the named Plaintiffs agreed to (and the FLSA opt-in members were informed would be sought if Plaintiffs prevailed). Motion at 11. Class counsel represents that this award plus gross receipts tax amounts to only 19% of the total settlement.

18

Motion at 10. This amount apparently includes the amount of the settlement that is to be awarded to unjust enrichment class members. As the Court has already mentioned, it has concerns with the disparity in awards between FLSA collective action members and unjust enrichment class members. Moreover, it is highly likely that the unjust enrichment class members did not receive or simply ignored the class action notifications that they were sent in the mail. Thus the fact that the fee award is far less than the amount the named plaintiffs and FLSA collective action members agreed to has no real bearing on whether the unjust enrichment class members would approve of the fee award.

In any event, even subtracting the $33,000.00 award to the unjust enrichment class from the total award, the total attorneys' fee award is still only 23% of the total award. Accordingly, the Court finds that the fee award is fair and reasonable in light of the pre-arranged fee award that members of the FLSA class and the named plaintiffs agreed to.

(7)     Time limitations imposed by the client or the circumstances

There is no indication in this case that time limitations or client demands imposed any special demands on class counsel. Accordingly, this factor comes down neither in favor of nor against the proposed fee award.

(8)     The amount involved and the results obtained

Plaintiffs estimated their damages to be roughly $300,000. Had Plaintiffs prevailed at trial, they would have been entitled to this amount plus reasonable attorneys' fees under the FLSA. *See* 29 U.S.C. § 216(b). Since attorneys' fees are subtracted from the settlement, the award to Plaintiffs is significantly less than the amount Plaintiffs sought to obtain at trial. But given Defendant's defenses and the overall uncertainty of trial, the Court finds that Plaintiffs' settlement justifies the fee award.

(9)     <u>The experience, reputation, and ability of the attorneys</u>

As the Court has previously noted, both here and in its earlier order granting Plaintiffs'

motion to certify this case as a collective action and as a class action under Rule 23(b)(3),

Attorney Youtz's credentials are sufficient to give the Court little pause in appointing him as

class counsel in a case like this. The Youtz Declaration explains Attorney Youtz's credentials

and experience in great detail. The problem is that in this case, Mr. Youtz spent no more than

three quarters of an hour reviewing the complaint. The rest of the work was done by Mr. Curtice,

Attorney Montalbano, and a paralegal. Unlike the information provided about Mr. Youtz, very

little information was given regarding those whose work comprises the lion's share of class

counsel's lodestar amount. Accordingly, this Court finds that this factor counsels against

approving the proposed fee award.

(10)     <u>The undesirability of the case</u>

"According to one estimate, FLSA filings have increased some 400 percent nationwide

since 2001…." *Lopez v. Nights of Cabiria, LLC*, --- F.Supp.3d ----, 2015 WL 1455689 (S.D.N.Y.

March 30, 2015) (citation omitted). Given the Supreme Court's recent efforts at raising the bar

for certification of class actions under Rule 23(b)(3), it is plausible to conclude that FLSA cases

will only increase. As one court noted, this is a good thing: "A law is only effective to the extent

it is enforced, and this increased litigation has been a positive development for many low-wage

workers." *Sakiko Fujiwara v. Sushi Yasuda Ltd*, 58 F.Supp.3d 424, 429 (S.D.N.Y. 2014). But as

the *Sakiko Fujiwara* court went on to note, "the same is true for their lawyers." *Id.* The Court

finds that this case is not undesirable, especially since Plaintiffs' would be entitled to statutory

attorneys' fees had they prevailed at trial. Accordingly, this factor does not increase the merit of

the proposed fee award.

(11)   <u>The nature and length of the professional relationship with the client</u>

Class counsel has not presented any evidence relevant to this factor, and the Court does not find it relevant to its consideration of the proposed attorneys' fee award.

(12)   <u>Awards in similar cases</u>

Class counsel points to an award it received in *Armijo v. Wal-Mart Stores, Inc.*, 168 P.3d 129 (N.M. Ct. App. 2007) as an indicator that the proposed fee award in this case is reasonable. But that case involved a class action under Rule 23(b)(3), not an FLSA collective action. The distinction is important. Although this Court ultimately granted Plaintiffs' motion to certify a class action for Plaintiffs' unjust enrichment claims, it noted that the standard for certifying a Rule 23(b)(3) class is palpably higher than the standard for conditionally certifying a collective action under the FLSA.

In sum, several of the *Brown* factors counsel in favor of the proposed attorneys' fee award in this case; others are either irrelevant or undermine class counsel's argument that the proposed fee award is reasonable. On balance, the Court is satisfied that the fee award is reasonable in light of the amount of work class counsel put into the case, the relative complexity of the litigation, and the favorable terms of the settlement for the FLSA collective action members.

B.   <u>Resolution of the unjust enrichment class's claims</u>

The Court now turns to the parties' agreement to essentially decertify the unjust enrichment class as part of their settlement. At the hearing on the parties' Motion, class counsel argued that this court has no authority to reject the settlement agreement for failing to afford unjust enrichment class members an opportunity to object to it. Second, even if the Court has authority to grant or deny the parties' motion to approve the settlement agreement on this

ground, class counsel argues that decertifying the unjust enrichment class but offering individual class members an opportunity to release any claims they have against the Defendant in exchange for a cash payment is fair and reasonable. The Court addresses each argument in turn.

      i.      <u>Whether this court has authority to evaluate notice to the unjust enrichment class and the fairness and reasonableness of the settlement agreement as to the unjust enrichment class</u>

Fed. R. Civ. P. 23(e) provides: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Rule 23(e)(2) provides: "If the [settlement] would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Finally, Rule 23(e)(5) provides that "[a]ny class member may object to the [settlement] if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval."

Under the settlement agreement, unjust enrichment class members are given a form notice that does not inform them that they have any right to object to the proposed settlement. Instead, unjust enrichment class members may either (a) sign a release and submit it to Defendant in return for a cash payment; or (b) not sign a release, and receive no money from the settlement fund. Plaintiffs argue that Rule 23(e)(2) does not apply to the unjust enrichment class members because the settlement agreement between Defendant and Plaintiffs does not "bind" the unjust enrichment class.

Plaintiffs argue that because the proposed settlement does not purport to "bind" members of the unjust enrichment class, the Court may not reject the proposed settlement for failing to afford unjust enrichment class members an opportunity to object to the settlement. But this argument conflates Rule 23(e) with Rule 23(e)(2). Under Rule 23(e)(5), "[a]ny class member

may object to the proposal if it requires court approval under this subdivision (e)." Whether or not a settlement requires approval under subdivision (e) does not, as Plaintiffs maintain, turn on whether the settlement "binds" class members. Rather, it depends on whether the agreement is a "settlement, voluntary dismissal, or compromise." *See* Fed. R. Civ. P. 23(e). 'Compromise' is defined as "an agreement for the settlement of a real or supposed claim in which each party surrenders something in concession to the other." Black's Law Dictionary 305 (8th ed. 2004). That is what this agreement is: Plaintiffs, as representatives of the unjust enrichment class, agreed not to take their unjust enrichment claims to trial; in exchange, Defendant would offer cash payments to class members who release any claims they may have against the Defendant that could have been brought in this litigation. *See* CLAIM FORM FOR UEC CLASS (Doc. No. 84-7) at 1–2. Accordingly, the settlement agreement is subject to Rule 23(e), and class members have a right under Rule 23(e)(5) to object to it.

It is worth dwelling on class counsels' position a little while longer. Class counsel made clear at the hearing on the Motion that the settlement agreement had been structured so as to avoid implicating Rule 23(e)(5). In other words, class counsel conceded that members of the unjust enrichment class who failed to opt into the FLSA collective action would likely be unhappy with being paid one fifth the amount collective action members are to be paid under the settlement. This is shrewd lawyering, but hardly becoming of someone who is supposed to "adequately represent the interests" of the unjust enrichment class members. Fed. R. Civ. P. 23(g)(1)(B). Class counsel argues that because the settlement agreement does not "bind" the class members, they are free to pursue claims against the Defendant on their own. But this ignores the fact that the unjust enrichment claims, if brought today, would be subject to a successful statute of limitations defense. Although the settlement agreement does not purport to

"bind" the unjust enrichment class members, the practical effect is just that: either take a payment from the Defendant or nothing at all. Accordingly, Rule 23(e)(1) and (e)(5) apply to the proposed settlement.

        ii.    <u>Whether the Court should nonetheless approve the agreement as fair and reasonable</u>

Despite this Court's misgivings with the settlement agreement in its current form, there is a strong argument that the Court should approve it anyway. As the parties have pointed out, unjust enrichment claims against state subdivisions have at best dubious chances of success under New Mexico law. *See Hydro Conduit Corp. v. Kemble*, 793 P.2d 855, 861, 110 N.M. 173, 179 (N.M. 1990) (finding that N.M. Stat. Ann. § 37-1-23 bars unjust enrichment claims against governmental subdivisions because unjust enrichment claims are based in contract). Given the unjust enrichment class's minute chances of success, there is some force behind the argument that the Court should simply approve the settlement anyway, since it gives unjust enrichment class members something, not nothing.

But Rule 23(e)'s mandates are not advisory; they may not be simply cast aside whenever a district court thinks a proposed settlement is "good enough." And class counsel may not excuse itself of its duty to represent both the FLSA and the unjust enrichment class members adequately with a narrow reading of the word "bound" in Rule 23(e)(1). Because the settlement has the practical effect of extinguishing the unjust enrichment class's claims, the Court must "direct notice in a reasonable manner to all class members" and give them an opportunity to object to the proposed settlement.

**CONCLUSION**

The Court finds that the settlement agreement with the FLSA class members is fair and reasonable. It also finds that the proposed attorneys fee award is reasonable. However, the settlement agreement as to the unjust enrichment class does not comport with the terms of Rule 23(e), which require unjust enrichment class members to be given notice and an opportunity to object to the proposed settlement. Accordingly,

IT IS ORDERED THAT the JOINT MOTION TO APPROVE SETTLEMENT, CLASS NOTICES AND FINAL JUDGMENT (Doc. No. 84) is DENIED as presented. The parties' may re-submit for the Court's approval a settlement agreement that gives notice to unjust enrichment class members that they may object to the proposed settlement and that contemplates a fairness hearing to be held at a date and time to be set by the Court.

_____
SENIOR UNITED STATES DISTRICT JUDGE